**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Johann Ernst THURNHUBER,
Defendant-Appellant.**

No. 76–2820.

United States Court of Appeals,
Ninth Circuit.

Dec. 30, 1977.

Before DUNIWAY, CHOY and KENNE-DY, Circuit Judges.

CHOY, Circuit Judge:

Johann Thurnhuber appeals his jury conviction on a three-count indictment charging him with making a false statement on a credit application to a federally insured bank, 18 U.S.C. § 1014. He argues here that (1) the bringing of two of the three counts under which he was convicted was improper as the product of prosecutorial vindictiveness in violation of *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) and *Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), and (2) the jury instruction on the issue of whether the false statements had to be "material" was defective as to all three counts. We affirm Thurnhuber's conviction on all counts.

## FACTS AND PROCEEDINGS BELOW

Thurnhuber was originally indicted and tried on one count under 18 U.S.C. § 1014 for making a false statement on a Master Charge credit card application. When the jury was unable to reach a verdict in that trial, the district court, *sua sponte*, declared a mistrial. On the following day, the Government filed a superseding indictment charging Thurnhuber with three counts under § 1014. Count I referred to the same conduct described above. Counts II and III charged Thurnhuber with making false statements on a separate loan application.

Evidence was introduced at the second trial to show, with respect to Count I, that in October 1973 Thurnhuber had applied for a Master Charge card at a Wells Fargo Bank in Modesto, California. On his application, Thurnhuber had identified himself as Hans von Burger and falsely claimed to be a retired airline pilot receiving $1,625.35 a month in retirement income from Lufthansa Airlines. As to Counts II and III, it was shown that Thurnhuber applied for a loan at the same bank in March 1974. On this loan application, Thurnhuber again gave his name as Hans von Burger and claimed to be receiving a monthly salary of $1,625.35. This time, however, he also stated that he had a note receivable from a real estate broker in the amount of $20,000.

It was stipulated at the second trial that Thurnhuber had never been employed by Lufthansa, and the real estate broker testified that, while he was acquainted with Thurnhuber, he was not indebted to him. Thurnhuber was convicted on all three counts and sentenced to serve consecutive terms of two years each on Counts I and II, with two years on Count III to be served concurrently with Counts I and II. This appeal followed.

## I. "MATERIALITY" INSTRUCTION

■ Thurnhuber claims the Government must prove that the false statement made in a bank credit application concerned a "material" matter in order to convict under § 1014. That section, in pertinent part, provides that

[w]hoever knowingly makes any false statement . . . for the purpose of influencing in any way the action of . . . any bank the deposits of which are insured by the Federal Deposit Insurance Corporation [is guilty of a federal crime].

It contains no express requirement that the false statement be "material."

Several courts have held—apparently following the lead of *Kay v. United States,* 303 U.S. 1, 5–6, 58 S.Ct. 468, 82 L.Ed. 607 (1938) (interpreting a predecessor of § 1014) —that the gist of a § 1014 violation is the knowing attempt to influence through false statements. *See, e. g., United States v. Sabatino,* 485 F.2d 540, 544–45 (2d Cir. 1973), *cert. denied,* 415 U.S. 948, 94 S.Ct. 1469, 39 L.Ed.2d 563 (1974); *United States v. Goberman,* 458 F.2d 226, 228–29 (3d Cir. 1972); *United States v. Kernodle,* 367 F.Supp. 844, 851–52 (M.D.N.C.1973). Under this reading of the statute, consideration of materiality only serves to show that the defendant intended to influence and mislead—elements which could be established without reference to the materiality of the statements.

On the other hand, at least one circuit has held that materiality of the matter concerning which the false statements were made is an essential, independent element of the offense. *See United States v. Kramer,* 500 F.2d 1185, 1187 (10th Cir. 1974).

In the instant case, the district court rejected the Government's proposed instruction which was modeled after that given in *United States v. Kernodle, supra.* It also refused Thurnhuber's proffered instruction, which was based on *United States v. Kramer, supra,* that materiality was a separate element of the offense. Instead, the court—in accordance with an alternative suggested by the Government—instructed the jurors that they must find the following in order to convict:

*First*: The act of making a false statement concerning a material matter upon an application . . . for the purpose of influencing the action [of the bank].

Thurnhuber now contends that this instruction was so ambiguous and misleading on the issue of materiality as to require reversal, and he argues that this circuit should follow the lead of the Tenth Circuit in *Kramer* in requiring the Government to prove materiality as an independent element.[1]

Assuming *arguendo* that materiality is a separate element of § 1014—thus providing Thurnhuber with a statutory interpretation most favorable to him at trial—we do not find that the instruction given by the district court was misleading. The instruction informed the jurors that they must find the "act of making a false statement concerning a material matter." Thurnhuber disagrees with the trial court over whether the "materiality" instruction should have been given in the same paragraph as the "purpose of influencing" charge, or in a fourth, separate paragraph to be given in addition to the requirements that the statement be made for the "purpose of influencing" the bank's action, that the defendant have acted knowingly and willfully in making the false statement, and that the bank at issue be federally insured. While—again on the assumption that materiality is a separate requirement—it would perhaps have been better for the trial court to have given a separate instruction particularizing the element of materiality, we cannot say that the instructions were misleading when viewed as a whole. *See United States v. Silla,* 555 F.2d 703, 706 (9th Cir. 1977); *United States v. Kaplan,* 554 F.2d 958, 968 (9th Cir. 1977); *United States v. Lemon,* 550 F.2d 467, 470 (9th Cir. 1977).

## II. "VINDICTIVE PROSECUTION"

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court held that, while there is no absolute constitutional bar to a judge's imposing a greater sentence upon retrial after a defendant had successfully attacked his conviction, due process does prohibit a judge from increasing a sentence in retaliation for the defendant's exercise of his statutory right to challenge his original conviction. The Court reasoned that due process requires both that such "vindictiveness . . . must play no part" in sentencing and "that a defendant [must] be freed of apprehension of such a retaliatory motive on the part of the sentencing judge." 395 U.S. at 725. It recognized that "[t]he existence of a retaliatory motivation would, of course, be extremely difficult to prove in any individual case," 395 U.S. at 725 n. 20, 89 S.Ct. at 2080 n. 20. Wishing "to assure the absence of such a motivation," 395 U.S. at 726, 89 S.Ct. at 2081, the Court held that a more severe sentence after retrial must be justified by actions of the defendant occurring after the original sentencing and appearing as part of the record so as to be subject to review. In the event that the state failed to present such justification, the defendant could not be given a sentence upon reconviction greater than that which he had received after the first trial. 395 U.S. at 726, 89 S.Ct. 2072.

In *Blackledge v. Perry,* 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974), the Court extended *Pearce's* concern for a sentencing judge's vindictiveness to situations involving retaliation by prosecutors.[2] There, a defendant who had exercised his statutory right to a trial *de novo* in a superior court following his conviction on a misdemeanor charge was reindicted for a felony. The Court ruled that, while there was "no evidence that the prosecutor in this case acted

---

1. This conflict over materiality will usually be only of academic interest. As in the present case, the usual situation will involve a statement which is clearly material. An individual is not likely to provide immaterial and unimportant information in the hope of influencing a bank's action. And an intent to influence is clearly a requirement of the statute.

2. Even before the Supreme Court's decision in *Blackledge,* several courts, including ours, had extended the reach of *Pearce* to encompass prosecutors as well as judges. *See, e. g., United States v. Gerard,* 491 F.2d 1300, 1305–06 (9th Cir. 1974); *United States ex rel. Williams v. McMann,* 436 F.2d 103, 105 & n. 5 (2d Cir. 1970), *cert. denied,* 402 U.S. 914, 91 S.Ct. 1396, 28 L.Ed.2d 656 (1971); *Sefcheck v. Brewer,* 301 F.Supp. 793, 795 (S.D.Iowa 1969).

in bad faith or maliciously in seeking a felony indictment against Perry," the rule of *Pearce* applied because of the grave "potential for vindictiveness" inherent in the given facts. 417 U.S. at 28, 94 S.Ct. [2098] at 2102. Since the state failed to make the requisite showing that the more serious charge was justified for independent reasons, the presumption of vindictiveness prevailed. *See* 417 U.S. at 29 n. 7, 94 S.Ct. 2098.

Thurnhuber argues here that the presumptive rule of *Pearce* and *Blackledge* applies to the two additional counts brought against him by the prosecutor after his mistrial. He maintains that the Government was fully aware of the March 1974 incident when it sought the first indictment on the October 1973 application alone, and that the Government has presented no explanation sufficient to overcome its burden to prove that the bringing of the two additional counts was not vindictively motivated. The Government argues principally that, by filing an affidavit explaining that it brought the two additional counts only to strengthen its evidence on the intent element of the charges, it succeeded in overcoming the presumption of vindictiveness. In ruling on Thurnhuber's pretrial motion to dismiss Counts II and III as violations of *Pearce* and *Blackledge,* the district court held that any presumption of vindictiveness which might arise on these facts was overcome by the prosecutor's explanation of his actions. Thurnhuber argues that the district court's denial of his motion to dismiss was clearly erroneous.

In *United States v. Ruesga-Martinez,* 534 F.2d 1367 (9th Cir. 1976), we characterized *Pearce* and *Blackledge* as establishing

beyond doubt, that when the prosecution has occasion to reindict the accused *because the accused has exercised some procedural right,* the prosecution bears a heavy burden of proving that any increase in the severity of the alleged charges was not motivated by a vindictive motive.

534 F.2d at 1369 (emphasis added, footnote omitted). Although a defendant's motion for a mistrial has been construed as the exercise of a procedural right for purposes of this rule, *see United States v. Preciado-Gomez,* 529 F.2d 935, 937–41 (9th Cir.), cert. denied, 425 U.S. 953, 96 S.Ct. 1730, 48 L.Ed.2d 197 (1976); *United States v. Jamison,* 164 U.S.App.D.C. 300, 505 F.2d 407, 415–16 & n. 15 (1974), the mistrial which was declared in Thurnhuber's first trial was not granted in response to a motion by him. Rather, the court on its own motion declared the mistrial when the jury was unable to reach a verdict. Hence, since Thurnhuber did not attempt at his first trial to assert any procedural right, the prosecutor's action in adding the two counts before the second trial cannot be characterized as a "retaliatory" or "vindictive" response to an assertion of a procedural right by a defendant. And, since there was no such assertion, there can be no resulting dampening effect on the defendant's exercise of a procedural right. Without that close temporal—or otherwise apparent—link between the exercise of the right and the "penalty," there can be no "realistic likelihood of 'vindictiveness,'" *Blackledge,* 417 U.S. at 27, 94 S.Ct. 2098, and there is, therefore, no need to invoke the broad presumptive rule of *Pearce* and *Blackledge. Cf. Chaffin v. Stynchcombe,* 412 U.S. 17, 24–28, 93 S.Ct. 1977, 36 L.Ed.2d 714 (1973) (different sentencing bodies upon retrial); *Colten v. Kentucky,* 407 U.S. 104, 116–18, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972) (same).[3]

---

**3.** An additional contention raised by Thurnhuber on appeal is that the presumption is aimed at the *appearance* of a vindictive penalty as well as at the *actuality* of vindictiveness. He reads *Pearce* and *Blackledge* to reason that an appearance of vindictiveness causes apprehension in defendants; that such apprehension in turn "chills" defendants' exercise of procedural rights; and that it is that chill at which the rule

is directed. Although we hold that the *Pearce-Blackledge* presumption is not triggered in this case because no procedural right was exercised by Thurnhuber, it should be noted additionally that the presumption is not based, as Thurnhuber argues, merely on the perceptions of defendants. It arises only as a shield against the possibility of *actual* vindictiveness and not against those situations which simply appear to

Thurnhuber's allegations of prosecutorial vindictiveness, therefore, must rest on an improper motive other than retaliation for the assertion of a procedural right. It is Thurnhuber, however, who bears the burden of showing improper prosecutorial conduct sufficiently grave to overcome an otherwise proper conviction. *See, e. g., United States v. Oaks,* 527 F.2d 937, 940 (9th Cir. 1975), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976); *United States v. Scott,* 521 F.2d 1188, 1195 (9th Cir. 1975), *cert. denied,* 424 U.S. 955, 96 S.Ct. 1431, 47 L.Ed.2d 361 (1976); *United States v. Bennett,* 539 F.2d 45, 54 (10th Cir.), *cert. denied,* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 293 (1976).

To show improper conduct, Thurnhuber points to statements contained in the affidavit filed by the prosecutor after the mistrial was declared that he was "upset and disgusted" with the jury's inability to reach a verdict given what he thought to be overwhelming evidence of Thurnhuber's guilt. The district court received this evidence and, in addition, had before it the reasons cited by the prosecutor for delaying an indictment on Counts II and III until after the mistrial on Count I. In his affidavit, the prosecutor stated that he thought that the one-count indictment would be sufficient to present the Government's case, and that only when it became apparent that the jury was having difficulty with the intent element did he realize that it might be necessary to indict for the March 1974 incident as well.

The district court accepted this explanation and ruled that, even if the prosecutor had the burden of overcoming Thurnhuber's claim of vindictive prosecution, he had succeeded in doing so by showing that proper prosecutorial zeal, rather than vindictiveness, had motivated his bringing of the two additional counts. We hold that the trial court's finding of no vindictiveness, which was reached even though the burden of

proof rested improperly on the prosecution, was not clearly erroneous. *See United States v. Hart,* 546 F.2d 798, 801–02 (9th Cir. 1976) (en banc), *cert. denied,* 429 U.S. 1120, 97 S.Ct. 1155, 51 L.Ed.2d 571 (1977).

AFFIRMED.

---

the defendant to be vindictively motivated. Language to the contrary is inconsistent with Supreme Court precedent which holds that the presumption is triggered only when the circumstances under examination actually present a

"realistic likelihood of vindictiveness," *Blackledge,* 417 U.S. at 17, 94 S.Ct. 2098, and raise a "reasonable" and "legitimate" fear of retaliation in defendants, *Chaffin v. Stynchcombe,* 412 U.S. at 22–23, 25, 93 S.Ct. 1977.